JOHN Q. ADAMS *vs.* HENRY H. TURNER.

Third Judicial District, Bridgeport, April Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Extrinsic oral evidence is admissible in aid of the interpretation of a written contract only when the words of the latter, taken as a whole, are ambiguous or of doubtful import.

The plaintiff agreed in writing to apply for foreign letters patent for certain "new and useful improvements" in hat finishing machines, and to sell, assign and transfer said letters patent, when obtained, to the defendant for a specified sum, the last instalment of which was to be paid when the patents were obtained and not later than one year from the date of the contract. *Held* that the words quoted referred to and included the improvements actually existing and embodied in the machine at the date of the contract, but did not embrace improvements which might afterwards be invented.

An antecedent oral agreement relating to the same matters covered by a
written contract, with which it is entirely inconsistent, may prop-
erly be demurred to when set up as a special defense to an action
on the written instrument.
A readiness and offer to convey by the plaintiff will be regarded as
equivalent to performance upon his part, where the defendant
wrongfully refused to accept the conveyance.
There is no necessity for the correction of a finding which states all the
facts essential to a review of any claim of law the appellant can
properly present.

Argued April 18th—decided May 22d, 1900.

ACTION to recover damages for a breach of contract, brought
to the Court of Common Pleas in Fairfield County and tried
to the court, *Curtis, J.;* facts found and judgment rendered
for the plaintiff for $1,728, and appeal by the defendant for
alleged errors in the rulings and findings of the court. *No
error.*

The appellant also applied to this court to rectify the appeal
in particulars not presented in his exceptions.

On the 13th of November, 1894, the defendant and John
B. Howe entered into the following contract in writing under
seal:—

"This indenture, made and entered into by and between
John B. Howe of Danbury, Connecticut, party of the first
part, and Henry H. Turner of the same place, party of the
second part, witnesseth: The party of the first part, for and
in consideration of $5,500, to be paid as follows: $250 to be
paid on the signing of this agreement, the receipt whereof is
hereby acknowledged; $2,000 to be applied on indebtedness
of the party of the first part to the party of the second part,
and $500 in cash upon the completion of the drawings for
the hereinafter mentioned patents in all the countries below
specified; $500 in cash in sixty days from the forwarding of
the drawings, and the balance to be applied on any further
indebtedness of the party of the first part to the party of the
second part, and the remainder in cash upon the transfer of
all of said letters patent to the party of the second part, or
in case all of said patents shall not have been issued, then in
one year from the date hereof,—agrees to make, as assignor to

said Henry H. Turner, application for, and if possible obtain, letters patent for certain new and useful improvements in hat pouncing or finishing machines in the following countries, to wit: Great Britain, France, Germany, Belgium, Austria, Spain, Canada, Brazil, Victoria and Italy.

"And the party of the first part further agrees to execute and deliver to the party of the second part, at the proper expense of the party of the second part, however, any further agreements or assignments which may be necessary for the due transfer of any and all of said letters patent; also to furnish to the party of the second part a complete set of blueprint drawings; also to give and grant to the party of the second part the sole and exclusive privilege to build said machines in the United States of America, for export to any and all of said countries or any country outside of the United States of America.

"And the party of the second part agrees to buy and purchase said patents or applications therefor, and pay for the same as above specified.

"In witness whereof we have hereunto set our hands and seals this 13th day of November, 1894."

The complaint alleges performance of the contract by Howe, a breach of it by the defendant in failing to pay a balance in money due upon it, and an assignment by Howe to the plaintiff Adams, of all Howe's rights under the contract.

The answer consists of four defenses, in each of which the execution of the contract is expressly or by implication admitted. The first defense admits certain paragraphs of the complaint and in effect denies the others; the second defense sets up in substance an oral agreement made prior to the execution of the written contract, between Howe and the defendant, by which Howe was to invent other patentable improvements to his patented machine mentioned in the written contract, and make it capable of " pouncing " hats made in the English manner, was to obtain foreign patents for said machines, as thus perfected, in the countries named in the written contract, and was to assign said foreign patents to the defendant for the sum of $5,500; said defense also

alleges a total failure on Howe's part to perform said oral agreement. The third defense alleges in effect a failure on Howe's part to perform the written contract, with respect to a United States patent for an improvement upon the machines mentioned in the written contract, obtained by him after the execution of said contract; and the fourth defense sets up an oral agreement substantially similar to the one set up in the second defense, which is alleged to have been made between Howe and the defendant after the execution of the written contract.

In reply, the plaintiff denied the matters set up in the third and fourth defenses, and demurred to the second defense, mainly on the ground that the oral contract set up therein was inconsistent with the terms of said written contract, and was not available as a defense in this action. The court sustained the demurrer, and found the issues upon the first, third and fourth defenses in favor of the plaintiff.

The facts found that are material upon this appeal are these, in substance: Pursuant to the terms of the written agreement Howe obtained in the defendant's name and turned over to him, before February 8, 1896, letters patent for the improvements described in and called for by said written contract, including not only the improvements which were secured to Howe by letters patent of the United States at the date of the written contract, but also every improvement in such machines conceived by Howe on or before said date.

On the 8th of February, 1896, Howe tendered to the defendant a complete set of blue-print drawings as called for by said contract, and then and there offered to execute and perform all the things required of him by said contract not already performed. The defendant refused to accept said tender and offers, on the ground then stated by him, that said drawings did not include that certain invention and improvement which is described in the third defense. Since that time both Howe and the plaintiff have been willing and ready to make good such tender and offers, but the defendant has refused to accept them. At the date of said tender there was due from the defendant upon said contract the sum of $1,415.

Adams *v.* Turner.

Upon the trial below, Newman, the patent solicitor who had secured the foreign patents covered by the written contract, was a witness for the plaintiff, and on his direct examination testified, against a general objection by the defendant, that the words " new and useful improvement " had in patent law the special meaning of " an existing improvement on certain lines of invention."

It appeared on the trial that the Howe machine was the first machine made for " pouncing " hats after they were stiffened, and that the defendant in his dealings with Howe was acting for his firm, Turner Brothers.

Upon the cross-examination of the defendant, the plaintiff was permitted to show by him, against the general objection of the defendant, that his firm in 1895 became interested in the Clark machine for pouncing hats; that it would pounce hats made in the English manner; that it was a better and cheaper machine than the Howe machine; and that the firm now owned all the Clark patents upon the Clark machine.

Upon the trial below the defendant in effect claimed and asked the court to rule that the words " new and useful improvements," as used in the written contract sued upon, included not only improvements actually existing in concrete form or in Howe's mind at the date of the written contract, but also all such further improvements in said machines as Howe might thereafter invent or discover.

The court held that those words included the former but did not include the latter sort of improvements.

The defendant further claimed that those words, as used in the written contract, were so ambiguous that he was entitled to offer evidence in aid of their interpretation, and to that end he offered evidence of conversations between Howe and the defendant, and their conduct, occurring both before and after the date of the contract, with reference to improving and perfecting said machine; and further claimed that even if those words were not ambiguous he was entitled to offer said evidence as showing the construction put upon them by the parties to the contract. The court overruled these claims and excluded such evidence.

The defendant further claimed that upon the facts found the plaintiff had failed to prove any grant to the defendant of the sole and exclusive privilege to build said machine in this country for export as provided for in the contract, and that judgment should be rendered for the defendant. The court overruled these claims.

There was a motion made to the trial judge to correct the finding, and an application to rectify the appeal was made to this court, by the defendant, which motion and application and the action had thereon it is not necessary to set forth here. The trial court rendered judgment for the plaintiff.

The errors assigned upon this appeal relate to the action of the trial court in sustaining the demurrer to the second defense, in admitting and in excluding certain evidence, and in overruling the defendant's claims.

*Goodwin Stoddard* and *Howard W. Taylor*, for the appellant (defendant).

*James E. Walsh* and *Henry A. Purdy*, for the appellee (plaintiff).

TORRANCE, J. · One of the important questions in this case is whether the words "new and useful improvements," in the written contract, include improvements in Howe's machine to be invented by him after the execution of the contract, or only those then actually embodied in the machine, and those then existing in his mind. The plaintiff contends that only the latter kind are included, while the defendant contends that the former as well as the latter kind are included. If this question can be answered in favor of the plaintiff's contention from an inspection of the contract itself, it will dispose of most of the questions in the case; and we are of opinion that it can be so answered.

In the written contract Howe agrees (1) to make application in certain foreign countries as assignor of the defendant, for letters patent "for certain new and useful improvements in hat pouncing or finishing machines"; (2) to execute

any other writings which may be necessary to transfer to the defendant any foreign patent obtained on such application; (3) to furnish to the defendant "a complete set of blue-print drawings" of the foreign patents so applied for; (4) to confer upon the defendant "the sole and exclusive privilege to build said machines" in this country for export to foreign countries.

For these things the defendant agrees to pay to Howe $5,500, in effect as follows: one half at the date of the contract, and the other half, part within one year and the remainder at the end of one year from the date of the contract.

All that Howe agrees to do under the contract clearly relates, we think, to improvements existing and known to the parties when the contract was made, and not to those thereafter to be invented.

The applications he is to make for foreign patents are clearly such as can be made substantially at once after the date of the contract, for he is to make them at once as assignor of the defendant, and the parties contemplated that most, if not all, of the foreign patents would be issued within one year from the date of the contract; and such applications could be made only for then existing improvements and inventions, and not for inventions to be made in the indefinite future. He is to furnish "a complete set" of blue-print drawings of the improvements described in said applications, and to do this within the year, and this could not be done as complete performance if the agreement included improvements thereafter to be invented at any time.

He agrees absolutely to confer upon the defendant a certain "sole and exclusive privilege," and this clearly refers to a then existing right in Howe to confer such a privilege, and not to any right of this kind which he may chance to possess in the future.

Then, again, all that Howe is to do under the contract is to be, or may be, by him done within one year or a much shorter time from its date. His performance within that time is full performance, and entitles him to all the money due on the contract; and this could not be true if the contract covers

any and all improvements to be invented at any time after its date. In short, the language of the contract clearly applies only to improvements existing when it was executed, and if it was the intention of the parties to cover after inventions as well, they have utterly failed to express that intention.

The contract itself, read as a whole, clearly shows that Howe agreed to sell, and the defendant agreed to buy, rights which Howe then possessed to improvements which then actually existed. Had the parties intended to include future inventions, they could easily have said so, and the fact that they have not said so is conclusive against the defendant's claim.

It thus appears that the words "new and useful improvements" in this contract, when read in connection with the rest of it, and without the aid of extrinsic evidence, mean actually existing improvements, and that their meaning in this respect is neither ambiguous nor uncertain.

Under such circumstances the evidence extrinsic to the writing, offered to show that the parties attached a different meaning to the words in question than the one expressed in the writing, was properly excluded, for it was both unnecessary and immaterial; it was unnecessary, because the writing itself is the primary evidence of what the parties meant, and if that of itself clearly shows what they meant there is no need of resorting to the inferior evidence; it was immaterial, because the meaning expressed in the writing as ascertained from the writing itself is controlling and must prevail over any meaning that could be established by extrinsic evidence.

It is only in cases where the words of the writing are, when read in connection with the entire writing, ambiguous or of doubtful import, that resort can be had in aid of their interpretation to the kind of extrinsic evidence which was offered and excluded in this case. *Hall* v. *Rand*, 8 Conn. 560; *Glendale Woolen Co.* v. *Protection Ins. Co.*, 21 id. 19, 37; *Woodbury Savings Bank* v. *Charter Oak Ins. Co.*, 29 id. 374, 381; *Bailey v. Close*, 37 id. 408, 411; *Hotchkiss* v. *Higgins*, 52 id. 205, 213; *West Haven Water Co.* v. *Redfield*, 58 id. 39, 40.

The court did not err in sustaining the demurrer to the second defense. The written contract appears to be, and for aught that appears to the contrary was intended to be, the final memorial of the agreement of the parties with respect to the improved hat machine, and the rights which the defendant was to acquire in it.

The second defense sets up an antecedent oral agreement, relating to the same matters covered by the written agreement, and utterly inconsistent with the terms of the latter. By the written agreement Howe is to have the $5,500 if he performs his part of that agreement, while by the oral agreement he is not to have this same money unless he performs his part of the written agreement and much more; by the former he is to have his money whether his machine is capable of "pouncing" hats in the English manner or not, while by the latter he is not to have it unless he makes it capable of doing this.

In short, the two agreements cover the same matters, and are so inconsistent that they cannot stand together. Under these circumstances the defendant cannot avail himself of the oral agreement, and the demurrer to the defense setting it up was properly sustained. *Beard* v. *Boylan*, 59 Conn. 181.

With reference to the general objections made by the defendant to certain answers of the witness Newman, and to certain evidence given by the defendant upon his cross-examination, it is sufficient to say, that upon the record it is not clear that the court erred in overruling the objections and admitting the evidence, but that if it did, the error is not such as to warrant a new trial.

The claim made by the defendant that the plaintiff had failed to prove any grant by Howe to the defendant of "the sole and exclusive privilege" to build the Howe machine for export, is not warranted upon the facts found. He offered to convey such right to the defendant, and has always been ready to do so, but the defendant refused to receive such conveyance, and such tender, upon the facts in this case, must be regarded equivalent to performance. As a general

rule "if he who is to be benefited by another's performing his agreement, is the occasion why it is not carried into execution, the party bound to performance will be in the same condition as if the agreement had been literally fulfilled." *Champion* v. *Hartshorne*, 9 Conn. 564, 568.

The defendant in this case made a motion to the trial judge for a correction of the finding, and an application to this court for a rectification of the record.* The finding as made presented fairly and fully all the facts necessary for presenting before this court every question which the defendant could properly present upon this appeal, and the motion and the application were alike unnecessary. Taking this view of them it is unnecessary to say more about them here.

There is no error.

In this opinion the other judges concurred.

---

* Upon the application alluded to in the opinion, the following memorandum was filed by the court: —

"Under the Act of 1897, p. 891, § 12, an application to rectify lies only as to matters not presented upon exceptions taken under the provisions of § 9 of said Act. In this appeal a claim is made (p. 41) that the finding should be corrected in accordance with certain exceptions which it is claimed were taken under said § 9. The application to rectify cannot be considered so far as it relates to matters embraced in exceptions properly so taken and pursued in the appeal. As to other matters embraced in said application, the court reserves its decision until after hearing the arguments on the merits of the appeal. Should it appear on such argument that any of such matters were material, the application will be granted as to such matters; otherwise it will be denied."