## CLARA STEVENS *vs.* CAECILIA I. YALE.

Third Judicial District, Bridgeport, October Term, 1924.

WHEELER, C. J., BEACH, CURTIS, KEELER and BANKS, Js.

It is a sound and generally accepted rule that portions of a building which are retained under the control of the landlord for the common benefit of several tenants, are to be maintained and repaired by him, and that for negligence in the performance of this duty he is liable to a tenant who is thereby injured.

A landlord, who has covenanted to repair the leased premises, owes to his tenant the duty to exercise reasonable care in the performance of his promise; and if he negligently fails to make repairs within a reasonable time after notice of a breach of his covenant, he is liable in tort for resulting injury to the person or property of his tenant, provided such injury is the natural consequence of the breach and was fairly within the contemplation of the parties to the covenant.

The same remedy is available to those in privity with the tenant, as, for example, members of his family; whether a stranger, upon the same facts, could recover, *quære*.

The acquiescence of a tenant, privileged to terminate his tenancy, in the request of his landlord that he continue the relationship, is sufficient consideration to support a contemporaneous promise by the landlord to repair the premises; and, in the case of a tenancy from month to month, the duration of the promise is a question of fact.

The plaintiff alleged and offered evidence to prove that she suffered the injuries for which she sued as a result of slipping, after nightfall, upon an uncovered, ice-coated porch leading from her apartment in the defendant's three-family tenement house to the backyard. The ice had formed from water which had dripped down upon the porch from the snow-covered roof of the house because of defects in the common drainage system over which the defendant retained exclusive control, and which she had previously agreed to repair if the plaintiff would continue as her tenant. The jury returned a verdict for the plaintiff. *Held:*

1.  That, upon the facts alleged, the plaintiff had two causes of action in tort—the first, for breach of the defendant's legal duty to use ordinary care in the maintenance of the common drainage system; the second, for breach of the defendant's duty to use similar care in the performance of her promise to repair.

2.  That the verdict was reasonably supported by the evidence.

Argued October 31st, 1924—decided January 13th, 1925.

ACTION to recover damages for personal injuries alleged to have been caused by the negligence of the defendant, brought to the Superior Court in New Haven County and tried to the jury before *Haines, J.;* verdict and judgment for the plaintiff for $1,500, and appeal by the defendant. *No error.*

*Cornelius J. Danaher,* for the appellant (defendant).

*Lewis J. Somers,* for the appellee (plaintiff).

WHEELER, C. J. The plaintiff construes the complaint to allege two independent causes of action which she offered evidence to prove and claimed to have proved: 1. That defendant, having retained the exclusive·possession and control of the common water drainage system of her three-family tenement house, was charged with the duty of keeping the drainage system in repair; that plaintiff occupied one of these tenements as a tenant under an oral lease from month to month; and that in consequence of the defendant landlord's failure to keep the drainage system in reasonable repair, she suffered the personal injuries for which she seeks damages. 2. That the plaintiff notified defendant landlord of the defective condition of this drainage system, of which defendant retained the exclusive control, and she promised to repair this defect if plaintiff would remain as a tenant, but negligently failed to do so, and in consequence of such failure to repair, plaintiff suffered the injuries for which she seeks damages.

The appeal from the denial of the motion to set aside the verdict is not well taken. The jury might reasonably have found from the evidence produced by the plaintiff that the plaintiff was a tenant of defendant in July, 1922, occupying one of the tenements of defend-

ant's three-family tenement house, and that defendant retained the exclusive possession and control of the water drainage system, and that in this month plaintiff complained to defendant that the water leader—a part of the common water drainage system—directly above an uncovered platform leading from this tenement by steps to the backyard, was out of repair; that in the following September, October and November, plaintiff and her husband informed defendant that this leader was out of repair and that some one was liable to get hurt in the winter time, and threatened to move if defendant did not make the repair; that defendant thereupon, in these months, promised to make the repairs, but did nothing except that, in September, new rain leaders and conductors were brought to this building and stored in its cellar; that in fact this leader remained out of repair from July, 1922, to and including January 20th, 1923; that on the night of January 19th, 1923, snow fell, and plaintiff caused the same to be removed from this platform on the next morning, and on this morning plaintiff passed over the platform, which was then free of snow, to the backyard, and after her return to her tenement did not go out of doors until about 5:30 p. m., at which time she started to go to the backyard for coal, with a coal-hod in her hand, and stepped on the platform and slipped on a coating of ice which had formed thereon and which she did not see because it was dark, and fell and suffered the injuries for which she sues; that it had thawed during the day, and that the water from the melting snow was carried from the main roof of this house to the ell roof, and this water, and that from the snow on the ell roof, was carried thence by this broken leader to the platform and steps, on which plaintiff passed, and froze thereon.

Since the verdict is a general verdict, we must assume that the jury may have found in accordance with the

facts supporting each of these causes of action, and that the jury might reasonably, under proper instructions, have reached their verdict on either ground. *Aaronson* v. *New Haven,* 94 Conn. 690, 696, 697, 110 Atl. 872.

The defendant seems to claim in her brief that the case before the court on the first cause of action was based upon a breach by the landlord of her duty to the tenant, and that the court both improperly charged the jury as to this point and refused to charge, as requested, the settled law. Upon this subject, the court did charge concerning the general duty of a landlord to repair, as far as it was necessary to go, and, as far as the charge went, in accordance with our law. It said: "It is true as matter of law that in the absence of any contract or agreement to repair and where there is no deceit or warranty on the part of the landlord, a tenant who hires premises takes them as they are, at least in so far as the obvious conditions are concerned, it being held that for the term of the tenancy he owns the leasehold estate of the premises which he has taken." This was said preliminarily. Defendant's fourth request to charge, which states at great length the duty of the landlord to the tenant, is not relevant to either of the causes of action upon which the complaint stands. The trial court follows the preliminary statement we have quoted with a correct statement of the law relative to the first named cause of action involved. Its statement of the law accorded with the rule announced in *Koskoff* v. *Goldman,* 86 Conn. 415, 424, 85 Atl. 588: "It is a rule of sound reason, and one generally accepted, that the duty of maintenance and repair rests upon a landlord in respect to common passageways and approaches in or to a building occupied by several tenants, which passageways or approaches are retained under his control for the use of several tenants as a means of access to the portions of the premises leased to them, and that the

landlord is liable for injuries received by a tenant by reason of the landlord's negligence in the performance of this duty." See also *Gallagher* v. *Button,* 73 Conn. 172, 177, 46 Atl. 819; *Gausco* v. *Levy,* 89 Conn. 169, 93 Atl. 136; *Brundrett* v. *Rosoff,* 92 Conn. 698, 104 Atl. 67; *Cook* v. *Simon,* 98 Conn. 98, 118 Atl. 634; *Pignatario* v. *Meyers,* 100 Conn. 234, 123 Atl. 263; and in *Watkins* v. *Goodall,* 138 Mass. 533, the same rule was applied upon a set of facts nearly related to those which the jury may have found. The defendant does not controvert this rule, but contends that there was no evidence that any ice had formed on the rear platform from water discharged from a defective leader. On the contrary, we are of the opinion that the jury might reasonably have made this deduction.

The second cause of action, arising out of the failure of the defendant, after knowledge of the defective condition of the leader, to fulfil her agreement to repair it, provided the plaintiff would continue in her tenancy, counsel for the defendant attack as unsound in law, for the reason that the landlord is under no obligation to make repairs unless such stipulation is made a part of the original contract, and that any subsequent promise to make repairs, founded merely on the relation of the parties and not being one of the conditions of the lease, is without consideration, and for that reason creates no liability. The request, if made, by defendant to plaintiff to remain as her tenant and her acquiescence in the request, was upon the consideration of defendant's promise to repair the leader. Whether this promise was made in the lease, or after its making, it was made upon a valuable consideration. Plaintiff's acquiescence in defendant's request that she remain as her tenant, was made upon such a consideration. *Bennett* v. *Sullivan,* 100 Me. 118, 60 Atl. 886; 1 Tiffany, Landlord & Tenant, p. 600, § 87.

The majority of the authorities deny the right of a recovery to the tenant for an injury to his person or property suffered in consequence of the failure of the landlord to keep his covenant to repair. "Such injuries," Tiffany, at page 592, says, "resulting not directly from a breach of the contract, but from physical conditions existing apart from the contract, which the contract merely undertook to eliminate, cannot well be regarded as a proximate result of the breach of the contract, within the contemplation of the parties at the time of the making thereof. To allow a recovery for such injuries is to allow a recovery as for tort on account of a breach of contract." This view leaves the tenant remediless, unless he make the repairs himself or, if he can legally do so, give up his tenancy.

The court, in *Dailey* v. *Vogl*, 187 Mo. App. 261, 264, 173 S. W. 707, thus states the rule: "He [the landlord] is not liable in tort for negligence. The sum of his liability is governed by his contract. For he only becomes liable by reason of his contract; therefore the contract determines its extent. Only being liable by reason of his contract, there is no duty resting upon him, except under the contract; his relation to the tenant is *entirely contractual*, and therefore an action of tort for negligence has nothing to rest upon." Authorities supporting this view exclude the recovery for personal injuries except in cases of fraud, or where a duty arose in part from the contract, from the law by reason of the relation of the parties, or in the negligent performance of the duty to repair. *Davis* v. *Smith*, 26 R. I. 129, 58 Atl. 630; *Tuttle* v. *Gilbert Manufacturing Co.*, 145 Mass. 169, 174, 13 N. E. 465; *Dustin* v. *Curtis*, 74 N. H. 266, 269, 67 Atl. 220; *Miles* v. *Janvrin*, 196 Mass. 431, 82 N. E. 708; 1 Tiffany, Landlord & Tenant, pages 592–597, and cases cited in notes.

Other authorities support the view that the breach of

the agreement to repair, causing injury to the person or property of the tenant, will not in and of itself give a cause of action for negligence, but that when the breach is followed by notice of the breach and this by a reasonable time in which the landlord could have made the repair, he will be held liable for the injury to the tenant in his person or property, in an action of tort in consequence of his negligence in failing to make the repair.

In *Robinson* v. *Heil*, 128 Md. 645, 653, 98 Atl. 195, it is said: "There is much diversity of opinions in other jurisdictions upon the question as to the right of the tenant or a member of his family to maintain an action of tort upon the landlord's agreement to repair. But in this State it is settled, *first*, that an action of tort cannot be maintained by a tenant against his landlord for personal injuries sustained by reason of his landlord's mere failure or mere breach of his agreement to repair; but that such an action will lie for the *negligent* failure of the landlord to make the repairs agreed upon where it is shown that injury to the tenant has resulted from *such failure;* and *secondly*, that the liability of the landlord to a member of the tenant's family for personal injuries resulting from *such negligent failure* to repair is practically the same as to the tenant himself." See also *Thompson* v. *Clemens*, 96 Md. 196, 53 Atl. 919; *Pinkerton* v. *Slocomb*, 126 Md. 665, 95 Atl. 965; *Veal* v. *Hanlon*, 123 Ga. 642, 51 S. E. 579.

"The action," says the court in *Keegan* v. *Heileman Brewing Co.*, 129 Minn. 496, 498, 152 N. W. 877, "is for the wrong committed by the landlord by his negligence in failing to perform an act assumed by him, which he should know would protect them from injury if performed, or expose them to injury if not performed." See also *Kurtz* v. *Pauly*, 158 Wis. 534, 149 N. W. 143; cases cited in note, 8 A. L. R. 773;

cases cited in note 193, page 594, and notes 196–202, pages 596–598, 1 Tiffany, Landlord & Tenant. Mr. Tiffany says, on page 596: "No distinction can, it is conceived, be taken between the case of injury to the person of the tenant or one of his family, and injury to his chattels on the premises, and these cases may be considered as equivalent to decisions that he would be liable for such personal injuries as a result of his failure to perform his contract." The true measure of damages for breach of the contract of lease, is such damages as would be the natural consequence of such breach and fairly within the contemplation of the parties. Situations may arise, where the injury to property would not be remote but within the contemplation of the parties, while the injury to the person could not be held to be within such contemplation. The difference between the rental value of the premises with the repairs and without the repairs will often be the proper measure of damages, but cases have arisen and are bound to arise which require another rule. Those injuries which the parties may fairly be held to have contemplated as a consequence of the breach when applied as a measure of damages will reach juster results in more cases than any other.

In *Rumberg* v. *Cutler*, 86 Conn. 8, 84 Atl. 107, the plaintiff tenant had leased a store of defendant landlord by written lease, in which the landlord agreed to keep the leased premises in repair whenever the tenant called his attention to a needed repair. The plaintiff claimed that owing to the defective condition of the show window where he displayed his goods, they had become damaged. We held in accordance with the general rule: "No duty, therefore, rested upon the defendant to make repairs, except that which was created by his covenant. Where a lessor agrees to keep the leased premises in repair, he is not liable

for failure to repair, unless he has notice that the repairs are necessary. But in such case, where no notice is provided for in the covenant, it is sufficient if the lessor had actual notice of the defect complained of. . . . The provision for notice by him in the covenant prevented his making claims for damage until he had given the defendant notice of the defect complained of. After such notice, the defendant would have reasonable time in which to make the repairs. . . . But if the repairs had been properly made, so that it was then safe to place the goods in the window, and subsequently the roof became again out of repair, the defendant would not be liable for the damage caused by the later defect until he had been notified of and had had a reasonable time within which to repair it." While counsel did not claim that these damages were too remote to have been in the contemplation of the parties and hence not within the covenant to repair, and the point was not considered by the court, it was necessarily involved in the decision, which can be supported only upon the theory that an injury to property which was fairly within the contemplation of the parties in making the covenant to repair, will be held to be within it. Liability for such damage arises through breach of the covenant to repair and not in case for a tort. This rule governs in the case of the tenant and those in privity with him. Whether an action in tort would lie in behalf of a stranger upon the same facts, we find no occasion to consider at this time.

The case presented in this record is not that of a mere breach of an express covenant to repair in a lease followed by notice of the breach and a failure to repair within a reasonable time. It is that of the failure of the defendant landlord to repair a part of the tenement house of which she retained the exclusive control, after

notice of the defect and a failure to repair within a
reasonable time, the use of the part so remaining
under her control being common to the tenants, in-
cluding the plaintiff.   It might have been logically
possible to find liability under such circumstances,
arising out of the covenant of the landlord implied by
law to keep and maintain that part of which the land-
lord retained the control, and to have predicated the
rule of law accordingly; but the courts have preferred to
find, in the failure of the landlord to keep in repair
the part of which he kept control, a breach of duty
on his part to keep it in repair for the common use of
all his tenants in the building, and to predicate an
action in tort against the landlord for the negligent
breach of this duty; the same form of action being given
whether the breach be of an express covenant or of a
covenant arising out of the lease and implied by law.
The jurisdictions which hold the most rigorously to the
rule that covenants to repair in a lease in no case can
give an action for injuries to person or property, are
equally definite in giving an action for tort in a situa-
tion where the injury results from the breach of the
landlord's duty to repair a part of his tenement kept
within his exclusive control.   In *Dailey* v. *Vogl*, 187
Mo. App. 261, 270, 173 S. W. 707, we find it stated:
"If the landlord in this case had agreed to keep and
maintain the walk in safe condition and he had re-
tained control of it so as to be able to watch over it
and effectuate that purpose, plaintiff, having the
right, of course to use it, a different question would
be involved.   For if he then carelessly neglected its
safety, in consequence of which the tenant was in-
jured, he would be guilty of a wrong and the case
would belong to that other class which we have men-
tioned above (*McGinley* v. *Alliance Trust Co.*, 168 Mo.
257, 66 S. W. 153) where the place involved remains

in charge of the landlord whose duty, whether express or implied, is to keep it in safe condition for the common use of his different tenants, as in the instance of stairways, halls, porches, etc., in flats or tenement houses." See also *Domenicis* v. *Fleischer*, 195 Mass. 281, 81 N. E. 191; *Miles* v. *Janvrin*, 196 Mass. 431, 433, 82 N. E. 708.

The first claimed cause of action in the complaint in this action is for a breach of duty arising by operation of law out of the relation of the parties, or out of the covenant to repair implied by law. The second claimed cause of action is for a breach of duty arising by operation of law out of the promise to repair a named defect, made during the term of the lease and negligently fulfilled. Both are actions of tort for breach of duty imposed by law. The court did not err in its instruction as to these causes of action.

Defendant further requested the court to charge, in effect, that the lease, being an oral one from month to month, the promise to repair, if found by the jury to have been made, expired with the end of the month in which such promise was made, or the immediately succeeding month. The court declined to so charge, but instructed the jury that the duration of time of the promise, that is, whether it was a continuing promise with a continuing tenancy, was a question of fact for their determination. The charge in this particular was correct and entirely adequate for the guidance of the jury.

There is no error.

In this opinion the other judges concurred.